UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LINCOLN SMITH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:21-cv-10039-IT |
| | * | |
| CITY OF BOSTON, BOSTON POLICE DEPARTMENT, ACTING COMMISSIONER GREGORY LONG,[1] WILLIAM G. GROSS in his individual capacity, DETECTIVE MATTHEW BECKER, POLICE OFFICER DANA LAMB, and JUNE FREEL, | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER

August 24, 2021

TALWANI, D.J.

Following a physical altercation with his sister and his subsequent arrest and acquittal, Plaintiff Lincoln Smith brought this suit in Suffolk Superior Court against his sister, the arresting officers, the City of Boston, the Boston Police Department, and then-Commissioner William G. Gross. Compl. [#1-1]. Defendant City of Boston removed the case based on federal question subject matter jurisdiction, Not. of Removal [#1], and later moved to dismiss all claims against all Defendants other than Defendant June Freel, City of Boston Mot. to Dismiss [#8]; the arresting officers moved separately to dismiss the claims against them on qualified immunity

---

[1] The Complaint [#1-1] named William G. Gross in his individual capacity and in his official capacity as Commissioner of the Boston Police Department. Id. ¶ 10. William Gross no longer holds that office, and, accordingly, Acting Commissioner Gregory Long is substituted as a party for William G. Gross in his official capacity. See Fed. R. Civ. P. 25(d); see also Opp'n to City of Boston Mot. Dismiss 4 [#20] (requesting substitution).

grounds, Becker & Lamb Mot. to Dismiss [#27]; and Freel has filed an Answer and Counterclaim [#25].

For the reasons that follow, the Motions to Dismiss [#8, #27] are ALLOWED and the action is remanded to state court.

I. Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss is appropriate when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell v. Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 337, 383-84 (1st Cir. 2011) (citing Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Yet "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice to state a cause of action. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of anything more than the mere possibility of misconduct. Id. at 679.

Barring narrow exceptions, unless a motion to dismiss is converted into one for summary judgement under Rule 56 of the Federal Rules of Civil Procedure, a court must only consider the complaint, documents attached to it, and documents expressly incorporated into it. Foley v. Wells Fargo Bank N.A., 772 F.3d 63, 72-74 (1st Cir. 2014). These exceptions may include documents the authenticity of which are not disputed by the parties, official public records,

documents central to the plaintiff's claim, or documents sufficiently referred to in the complaint. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

## II. Factual Background

The following facts are drawn from the Complaint [#1-1], the well-pleaded allegations of which are taken as true for the purposes of evaluating a motion to dismiss. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

On February 27, 2018, Plaintiff was visiting his mother at the Hebrew Rehabilitation Center (the "Center") in the Boston neighborhood of Roslindale. Compl. ¶ 16 [#1-1]; see also Opp'n to City of Boston Mot. Dismiss 1 n.1 [#20]. During this visit, Defendant June Freel arrived at the Center. Compl. ¶ 17 [#1-1]. Freel, who is Plaintiff's sister, "engaged [Plaintiff] in a heated and confrontational manner" and during the confrontation spat in Plaintiff's face. Id. at ¶¶ 17-18. Plaintiff then pushed Freel away and Freel began striking Plaintiff on the side of his head. Id. at ¶ 18. Center security officers arrived during the confrontation and "prevented any further interaction" between Plaintiff and Freel. Id. at ¶ 20. The incident was captured by the Center's video surveillance. Id. at ¶ 19.

After Center security officers intervened, Freel, who is a retired Newton Police Officer, contacted the Boston Police Department and reported that she had been assaulted. Id. at ¶¶ 17, 21. Defendants Detective Matthew Becker and Officer Dana Lamb of the Boston Police Department arrived at the Center, interviewed Freel, and then arrested Plaintiff. Id. at ¶ 21. Plaintiff told Detective Becker and Officer Lamb that he was not the aggressor and that "he had been the victim of an assault and battery by his sister because she spat in his face and then struck him multiple times on the side of his head." Id. at ¶¶ 26-27. Although Detective Becker and Officer Lamb were aware of the surveillance video while at the incident scene, they did not

review it prior to handcuffing Plaintiff and taking him to Boston Police Department Area E-5. Id. at ¶¶ 22-23, 25. Plaintiff alleges that the video shows Freel initiating the confrontation by spitting on Plaintiff's face, and Plaintiff pushing Freel away. Id. at ¶ 22.[2]

On April 11, 2019, at Plaintiff's criminal trial on the assault and battery charge resulting from this incident, Detective Becker testified he determined Plaintiff was the "'dominant aggressor' based solely on the report made by June Freel." Id. at ¶ 24. On September 4, 2019, Plaintiff was found not guilty of the charged offense. Id. at ¶ 4.[3]

---

[2] Plaintiff alleges further that the video shows that the reason he pushed her was "to prevent any further attack upon his person." Compl. ¶ 22 [#1-1]. A video does not itself show motive, however, and Plaintiff does not allege that he told the officers that he acted to protect himself from physical harm.

[3] The City of Boston has proffered additional facts based on the surveillance video of the confrontation, see Ex. A [#9-1], and the docket sheet from Defendant Freel's criminal case in Boston Municipal Court, see Ex. B [#9-2]. The City of Boston argues that the video may be considered because Plaintiff references it in his Complaint [#1-1] and the docket sheet may be considered because it is a public record. City of Boston Mem. in Support Mot. Dismiss 2-3 n.2 [#9]. Plaintiff objects to the introduction of this material, arguing neither should be considered on a motion to dismiss or, in the alternative, the motion to dismiss should be converted to one for summary judgment. Opp'n to City of Boston Mot. Dismiss 2-3 [#20].
     The court will not consider either exhibit in connection with the pending motions. First, the motions can be resolved without reference to the attached documents. Second, where material is offered to contradict facts asserted in a complaint, the court does not generally consider such material on a motion to dismiss unless the material is both authenticated and so central to the complaint that the material renders the allegations of the complaint entirely implausible. See e.g., Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005) (considering administrative agency's right to sue letter and plaintiff's notice of retirement, where claim depended on statute of limitations and administrative exhaustion); Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33-34 (1st Cir. 2001) (considering parties' prior settlement agreement as plaintiff's claim depended directly on interpreting the agreement); Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988) (considering allegedly libelous article that formed basis off libel claim). Defendants have made no such showing here.

III. Discussion

   A. Section 1983 Claims

Counts I and II of the Complaint [#1-1], allege violations of 42 U.S.C. § 1983. Section 1983 creates a civil cause of action against an individual acting under color of state law who violates a plaintiff's federally protected rights. 42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997) (citation omitted). The court addresses these claims as they apply to the various defendants.

     1. Claims Against the City of Boston, its Police Department, and Individual Defendants in their Official Capacity

In Count I, Plaintiff alleges the Commissioner, Detective Becker, and Officer Lamb, acting in their official capacities, denied him his right under the Fourth Amendment to be free from unlawful restraint. Compl. ¶ 31 [#1-1].[4] In Count II, Plaintiff alleges the City of Boston, through its Police Department, demonstrated a custom, policy, and practice of deliberate indifference that violated Section 1983. Id. at ¶¶ 38, 40.[5] On March 19, 2021, Plaintiff stated he did not oppose the City of Boston's Motion to Dismiss [#8] the Section 1983 claim against the City of Boston and the Police Department (Count II). See Letter [#24]; see also Opp'n to City of Boston Mot. Dismiss 4 [#20] ("Plaintiff concedes that he cannot provide factual support for his

---

[4] Plaintiff's further allegation in Count I that these individuals are liable under § 1983 in their individual capacities is addressed below.

[5] The BPD is not a separate legal entity from the City of Boston. See Dew v. City of Bos., 405 F. Supp. 3d 294, 301 n.4 (D. Mass. 2019) (quoting Douglas v. Bos. Police Dep't, No. 10-11049-WGY, 2010 WL 2719970, at *4-5 (D. Mass. July 1, 2010) (dismissing Section 1983 claim against Boston Police Department because it was not a separate legal entity from the City of Boston)).

42 U.S.C. § 1983 claim against the City of Boston and the Boston Police Department."). Accordingly, the court dismisses Count II.

The claims in Count I for damages against the Commissioner and the individual officers in their official capacities fail as well. "A suit [for damages] against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). In such a claim, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. Accordingly, the court also dismisses the claims against the Commissioner and the individual officers in their official capacity as well.

2.  Claims Against the Arresting Officers in their Individual Capacity

In Count I, Plaintiff also alleges under 42 U.S.C. § 1983 that Defendants Detective Becker and Officer Lamb violated Plaintiff's Fourth and Fourteenth Amendment rights by failing to conduct an appropriate investigation and arresting him for intentional assault and battery without probable cause. Defendants argue Plaintiff's claim concerning the adequacy of the investigation is not cognizable, the arrest was supported by probable cause and, even if there was no probable cause, Detective Becker and Officer Lamb are entitled to qualified immunity. City of Boston Mem. in Support Mot. Dismiss 1-2 [#9]; Becker & Lamb Mem. in Support Mot. Dismiss 2 [#28].

Here there is no dispute that Detective Becker and Officer Lamb were acting under color of state law when they arrested Plaintiff; thus, the court turns to whether the alleged conduct worked a denial of Plaintiff's rights secured by the constitution or federal law.

i. False Arrest

Plaintiff contends the officers did not have probable cause to arrest him, Opp'n to Becker & Lamb's Mot. Dismiss 3 [#32], and had the officers watched the surveillance video instead of showing favoritism to Freel, a retired police officer, they never would have arrested Plaintiff. Id.

(a) Probable Cause Standard

An arrest is lawful when the arresting officer has probable cause to believe the person has committed a criminal offense. See, e.g., Beck v. Ohio, 379 U.S. 89, 91 (1964). Probable cause "is not a high bar." Kaley v. United States, 571 U.S. 320, 338 (2014). It "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands." Gerstein v. Pugh, 420 U.S. 103, 121 (1975). Probable cause exists where "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [arrestee] had committed or was committing an offense." United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987) (quoting Beck, 379 U.S. at 91). "The inquiry into probable cause focuses on what the officer knew at the time of the arrest and should evaluate the totality of the circumstances." United States v. Vongkaysone, 434 F.3d 68, 73 (1st Cir. 2006) (citations omitted).

(b) Probable Cause Determination

To determine whether Detective Becker and Officer Lamb had probable cause to arrest Plaintiff for intentional assault and battery,[6] the court considers the facts and circumstances known to the officers at the time of the arrest.

---

[6] "An intentional assault and battery is the intentional and unjustified use of force upon the person of another, however slight." Commonwealth v. Porro, 458 Mass. 526, 529, N.E.2d 1157 (2010) (internal citation and quotation omitted).

7

Here, the Complaint [#1-1] alleges that Freel reported to the Boston Police Department that she was assaulted, the officers arrived on the scene and separated Plaintiff and Freel, the officers interviewed Freel, who told them that Plaintiff was the "dominant aggressor," Compl. ¶¶ 21, 23 [#1-1], and Plaintiff, who told the officers he was not the "aggressor in this altercation," id. at ¶ 27, and that he had been the "victim of an assault and battery by his sister June Freel because she spat in his face and struck him multiple times on the side of the head." Id. at ¶ 26. Presented with conflicting accounts of the altercation, a reasonable officer could have made a credibility assessment as to Freel and Plaintiff and found Freel's account more credible than Plaintiff's and, based on Freel's statements that Plaintiff was the dominant aggressor and assaulted her, determined there was probable cause to arrest Plaintiff. Cf. Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir. 2004). Although Plaintiff alleges his account of the altercation would have been confirmed had the officers watched the video, he alleges no facts that would have made it unreasonable for the officers to find Freel's story credible; Plaintiff has alleged nothing about Freel's demeanor when speaking to the officers or details of her account of the incident that would have undermined her credibility. Moreover, a reasonable officer might have found Freel credible, in part, because she was a retired police officer; that does not undermine probable cause as officers must make quick credibility assessments and use the information they have in the moment to do so. Cf. Ornelas v. United States, 517 U.S. 690, 700 (1996) (explaining that Supreme Court cases "have recognized that a police officer may draw inferences based on his own experience in deciding whether probable cause exists") (citation omitted). Although an alleged victim's statement does not automatically establish probable cause to arrest, see, e.g., Lewis v. Kendrick, 944 F.2d 949, 952 (1st Cir. 1991), "police officers can justifiably rely upon the credible complaint by a victim to support a finding of probable cause."

Forest, 377 F.3d at 57; see also Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 10 (1st Cir. 2004) ("The uncorroborated testimony of a victim or other percipient witness" is usually enough to support a finding of probable cause.). Here a reasonable officer could have found Freel credible and credited her complaint.

Turning next to the video, Detective Becker and Officer Lamb were not required to view the video before arresting Plaintiff. Once the officers determined there was probable cause to arrest Plaintiff for assault and battery, they could lawfully take Plaintiff into police custody. Even if the video would have provided further evidence, requiring the Defendants to investigate the video would impose a higher burden than what is required by probable cause. "When an arresting officer has the benefit of an apparently credible eyewitness account, the amount of arguably exculpatory evidence must be substantial before further investigation can be required as a constitutional matter." Acosta, 386 F.3d at 11.

Given the totality of the facts and circumstances known to the officers at the time of the arrest, the court finds that there was probable cause to arrest Plaintiff for assault and battery under Mass. Gen. Laws ch. 265, § 13A.

    ii. Qualified Immunity

Lamb and Becker argue that even if Plaintiff had established a violation of a constitutional right, Plaintiff cannot establish the right was clearly established. Becker & Lamb's Mem. in Support Mot. Dismiss 9-10 [#28]. Plaintiff argues that because he claimed self-defense, Becker and Lamb did not have probable cause and are not entitled to qualified immunity. Opp'n to Becker & Lamb Mot. Dismiss 5-6 [#32].

The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When a public official asserts a qualified immunity defense, courts engage in a two-part inquiry, asking (1) whether the facts alleged by the plaintiff make out a violation of a constitutionally protected right, and (2) whether, at the time of the defendant's alleged violation, the right at issue was clearly established such that a reasonable officer would have known that his or her conduct violated that right. See Morelli v. Webster, 552 F.3d 12, 18 (1st Cir. 2009).

Here, the court finds there was no constitutional violation because the officers had probable cause to arrest Plaintiff for assault and battery within the meaning of the statute. However, even if the officers did not have probable cause, there would not have been a violation of a clearly established right.

A police officer is entitled to qualified immunity "so long as the presence of probable cause is at least arguable." Ricci v. Urso, 974 F.2d 5, 7 (1st Cir. 1992) (citation omitted). In effect, this means police officers are protected by qualified immunity even where a court later determines there was no probable cause for arrest, so long as the mistake was a reasonable one. See Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992). "In other words, immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" White v. Pauly, 137 S. Ct. 548, 551 (2017) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)).

Based on the facts and circumstances known to the officers and clearly established law such as Forest, 377 F.3d at 57, and Acosta, 386 F.3d at 10, "a reasonably competent police officer could have believed that probable cause existed to arrest," Ricci, 974 F.2d at 6-7, as pre-existing law did not establish officers must observe a video of the alleged events, even when they

10

know such a video exists, in order to establish probable cause when a credible witness makes a complaint.

### iii. Conspiracy

Smith also claims Defendants conspired to deprive him of his civil rights. Compl. ¶ 34 [#1-1]. To establish a civil rights conspiracy, a plaintiff must show "not only a conspiratorial agreement but also an actual abridgment of some federally secured right." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001). Where the court has found no violation of Smith's constitutional rights, it must dismiss the claim that Defendants conspired to violate those rights.

### 3. Claims Against the former Commissioner Gross

Plaintiff may also be seeking to impose individual liability on former Commissioner Gross under the theory that he was "responsible for the proper training of the officers under his command" and, here, failed to ensure his officers followed proper procedures. Opp'n City of Boston Mot. Dismiss 4 [#20]; Compl. ¶ 31 [#1-1].[7] For a supervisor to be held liable in a Section 1983 action arising out of actions of a subordinate, the supervisor must have "disregarded a known or obvious consequence of his action," Connick v. Thompson, 563 U.S. 51, 61 (2011), and this conduct must be causally linked to the subordinate's violation of the plaintiff's civil rights, Voutour v. Vitale, 761 F.2d 812, 820 (1st Cir. 1985). Where, as here, the court has found the absence of a constitutional violation by the arresting officer, the supervisor cannot be held liable.

---

[7] Plaintiff is not clear as to whether this claim is brought against the Commissioner in his individual or only in his official capacity. See Compl. ¶ 10 [#1-1] (Gross is sued "in his individual and official capacities"); Opp'n to City of Boston Mot. Dismiss 4 [#20] (requesting substitution of Gross's successor pursuant to Fed. R. Civ. P. 25(d)).

11

A. <u>State Law Claims</u>

   1. Massachusetts Civil Rights Act

In Count Three, Plaintiff alleges Defendants violated the Massachusetts Civil Rights Act ("MCRA"), <u>see</u> Compl. ¶¶ 41-43 [#1-1], but concedes in his <u>Opposition</u> [#20], that "the City of Boston and the Boston Police Department cannot be sued under the Massachusetts Civil Rights Act as they are not persons under the Act." Opp'n to City of Boston Mot. Dismiss 5 [#20]. Because individual defendants in their official capacities are also not persons under the MCRA, <u>see</u> <u>Howcroft v. City of Peabody</u>, 51 Mass. App. Ct. 573, 593, 747 N.E.2d 729 (2001) (holding that unlike 42 U.S.C. § 1983 individual defendants in their official capacities are not "persons" under the MCRA), the court considers this claim against former Commissioner Gross, Detective Becker, and Officer Lamb in their individual capacities only.

A claim brought under the MCRA, Mass. Gen. Laws C. 12 S. 11I, requires a plaintiff to demonstrate that "(1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'" <u>Bally v. Northeastern Univ.</u>, 403 Mass. 713, 717, 532 N.E.2d 49 (1989).

Plaintiff has not alleged any facts supporting the inference that former Commissioner Gross took any actions towards Plaintiff, much less deprived him of his rights by threats, intimidation, or coercion; thus, Plaintiff has failed to state a claim under the MCRA as to Defendant Gross.

The individual officer Defendants argue both that "Plaintiff has not pleaded a constitutional violation" and that "neither officer threatened, intimidated, or coerced the

Plaintiff." Becker & Lamb's Mem. in Support Mot. Dismiss 11-12 [#28]. Plaintiff's argument relies on his allegation that there was no probable cause for his arrest, see Opp'n to Becker & Lamb's Mem. in Support Mot. Dismiss 6-7 [#32], and Plaintiff additionally argues that an arrest without probable constitutes coercion within the meaning of the MCRA. Id.

While Plaintiff argues he was arrested without probable cause, the court has found he has failed to plausibly allege such a violation. Therefore, he has not established that the exercise or enjoyment of any of his rights were interfered with. Moreover, to demonstrate that the arrest amounted to *coercion* or *intimidation* under the MCRA, Plaintiff must plausibly allege the officers lacked probable cause; accordingly, where the court has found the officers had probable cause to arrest, there is no coercion or intimidation under the MCRA. Cf. Nuon v. City of Lowell, 768 F. Supp. 2d 323, 335 n.8 (D. Mass. 2011) ("An arrest without probable cause has been found to constitute coercion within the meaning of the MCRA.") (collecting cases). Plaintiff has failed to state a claim under the MCRA.

   2. Negligent Infliction of Emotional Distress Against Detective Becker and Officer Lamb Individually

In Count Four, Plaintiff alleges that Defendants knew or should have known that their negligent actions in his arrest and detention would result in him suffering emotional distress. Compl. ¶ 47 [#1-1].

Defendants argue this claim is barred against Becker and Lamb because the Massachusetts Tort Claims Act ("MTCA") "provides the exclusive remedy for injuries allegedly caused by the negligent acts or omissions of municipal employees." Becker & Lamb Mem. in Support Mot. Dismiss 12 [#28] (citing Mass. Gen. Laws ch. 258, §§ 1, 2). Defendants also argue that even if the MTCA did not shield them from liability, Plaintiff has not adequately pleaded a negligent infliction of emotional distress claim. Id. at 14-16.

13

In the Commonwealth, negligence claims against municipalities related to the acts of their employees are governed by the Massachusetts General Laws chapter 258, the Massachusetts Tort Claims Act. The MTCA establishes the exclusive remedy for injuries allegedly caused by the negligent acts or omissions of municipal employees, see Mass. Gen. Laws ch. 258, §§ 1, 2, and municipal employees are not individually liable for negligence, see id. § 2; see also Stull v. Town of Weymouth, Civ. Action No. 11-11549-JLT, 2013 WL 5592605, at 5 (D. Mass. Oct. 9, 2013) ("The Massachusetts Tort Claims Act immunizes public employees from personal liability for negligence while acting within the scope of their employment.") (citations omitted). As Plaintiff brought suit against Defendants Detective Becker and Officer Lamb individually, this claim must be dismissed.

IV. Conclusion

For the foregoing reasons the Defendants' Motions to Dismiss [#8, #27] are ALLOWED and all claims against the City of Boston (including the Boston Police Department), William G. Gross in his individual capacity, Acting Commissioner Gregory Long in his official capacity, and Detective Matthew Becker and Police Officer Dana Lamb in their official and individual capacities are dismissed.

IT IS SO ORDERED.

August 24, 2021

/s/ Indira Talwani
United States District Judge